| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>ANSELL GRIMM & AARON, P.C.<br>Joshua S. Bauchner, Esq.<br>Ansell Grimm & Aaron, P.C.<br>365 Rifle Camp Road<br>Woodland Park, New Jersey 07424<br>*Attorneys for Harary Group, LLC* | |
| In re:<br><br>MYINT KYAW, a/k/a JEFFREY WU,<br><br>        Debtor. | Case No.: 820-72407-REG<br><br>Chapter 11<br><br>Honorable Robert E. Grossman, U.S.B.J. |
| HARARY GROUP, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>MYINT KYAW, a/k/a JEFFREY WU,<br><br>        Defendant. | Adv. No.:<br><br>**ADVERSARY COMPLAINT** |

Plaintiff, by and through their undersigned counsel, Ansell Grimm & Aaron, P.C., for their Adversary Complaint against Defendant, alleges as follows:

## THE PARTIES

1.    Plaintiff Harary Group, LLC ("Plaintiff") is a limited liability company registered to do business within the State of New Jersey with its principal place of business located at 275 State Route 18, East Brunswick, New Jersey 08816.

2.    Defendant/Debtor Myint Kyaw a/k/a Jeffrey Wu ("Defendant") is an individual with a personal address of 60 Overlook Road, Locust Valley, New York 11560.

1

## JURISDICTION

3. This Adversary Proceeding is being brought in connection with the Defendant's case under Chapter 11 of the United States Bankruptcy Code.

## FACTS

4. On February 14, 2019, Plaintiff filed a Complaint in New Jersey State Court against Defendant and Hong Kong Supermarket of East Brunswick, Inc. ("Hong Kong Supermarket") and H.K.S. of East Brunswick Realty, LLC ("HKS") bearing Docket Number MID-L:-1450-19 (the "State Court Action").

5. On July 5, 2019, Plaintiff filed an Amended Complaint in the State Court Action (the "Amended Complaint"). A true and correct copy of the Amended Complaint is annexed hereto as **Exhibit A**.

6. The Amended Complaint asserts numerous causes of action against Defendant as the guarantor of certain debts of Hong Kong Supermarket and HKS. *See* **Exhibit A**.

7. By way of background, in or around July, 1993, Leon Harary, E.B., as landlord and predecessor-in-interest to Plaintiff, entered into a written lease (the "Lease") with the soon to be formed Hong Kong Supermarket, to lease certain real property located at 275 Route 18, East Brunswick, New Jersey 08816 (the "Property"). A true and correct copy of the Lease is annexed hereto as **Exhibit B**.

8. The initial term of the Lease was for 15 years. *See* **Exhibit B** ¶ 1.

9. Rent and additional rent is due on the first of every month. *See* **Exhibit B** ¶ 2.

10. Pursuant to the Section 4 of the Lease, Hong Kong Supermarket is required to pay its proportional share of all costs associated with operation and maintenance of the Property and

common areas, including utilities and CAM charges, and taxes for the Property, which are considered additional rent. *See* **Exhibit B** ¶¶ 4 and 8.

11. In that same vein, the Lease clearly provides that the tenancy will be a "net" tenancy. *See* **Exhibit B** ¶ 11.

12. Section 14 of the lease provides the following:

> Tenant shall, without any previous demand therefor, pay to Landlord, or its agent, the Rent at the times and in the manner herein provided. In the event of the non-payment of the Rent, or any installment thereof, at the times and in the manner above provided, and if the same shall remain default for five (5) days…Landlord or its agents shall have the right to and may enter the Premises as the agent of Tenant, either by force or otherwise…Such re-entry by Landlord shall not operate to release Tenant from any Rent to be paid or covenants to be performed hereunder during the full term of this Lease.

*See* **Exhibit B** ¶ 14.

13. Furthermore Section 14 provides that Hong Kong Supermarket will be liable for all costs to repair the Property after default and to re-let the Property after default. *See* **Exhibit B** ¶ 14.

14. Hong Kong Supermarket is also liable to Plaintiff for all "reasonable attorney's fees and other expenses incurred by Landlord in enforcing Tenant's obligation to pay Rent or any other default of Tenant, whether or not a trial ensues." *See* **Exhibit B** ¶ 14.

15. Indeed, Section 68 of the Lease reiterates Hong Kong Supermarket's obligation to pay reasonable attorney's fees and costs of Plaintiff incurred "in enforcing any of the covenants, terms, and provisions of this Lease, or in terminating this Lease by reason of Tenant's default." *See* **Exhibit B** ¶ 68.

16. Upon a failure to pay rent, Hong Kong Supermarket shall be liable to Plaintiff for interest on the outstanding balance at the highest rate allowable by law. *See* **Exhibit B** ¶ 49.

17. On September 15, 2011, Plaintiff and Hong Kong Supermarket agreed to a new, Lease extension for the Property (the "Lease Extension"), inclusive of an increase in square footage for the rental Property. A true and correct copy of the Lease Extension is annexed hereto as **Exhibit C**.

18. The Lease Extension included a 15 year term extending through September 30, 2026. *See* **Exhibit C** ¶ 1.

19. The Lease Extension provides for a yearly base rent of $578,350.00 from 2012 through 2014, $613,320.00 from 2014 through 2017, $640,220.00 from 2017 through 2022, and $661,740.00 from 2020 through the end of the Lease Extension term. *See* **Exhibit C**, Schedule B.

20. The Lease Extension requires rent and additional rent to be paid on the first of every month. *See* **Exhibit C** ¶ 2.

21. The Lease Extension includes a 10% late charge for all rent and additional rent which is more than 10 days past due. *See* **Exhibit C** ¶ 2.

22. Section 4 of the Lease Extension requires Hong Kong Supermarket to pay its proportional share of all costs associated with operation and maintenance of the Property and common areas, including utilities and CAM charges, and taxes for the Property, which are considered additional rent. *See* **Exhibit C** ¶¶ 4, 8, and 29.

23. In that same vein, the Lease Extension clearly provides that the tenancy will be a "net" tenancy. *See* **Exhibit C** ¶ 11.

24. Section 28 of the Lease Extension provides that it shall be a default under the Lease Extension to fail to pay rent and additional rent when it becomes due and payable. *See* **Exhibit C** ¶ 28.

25. Section 28 further provides that Hong Kong Supermarket shall be reasonable for all "reasonable attorneys' fees, brokerage fees, and/or the cost of putting the [Property] in good order, and for preparing the same for re-rental" as a result of Hong Kong Supermarket's default. *See* **Exhibit C** ¶ 28.

26. Hong Kong Supermarket remains liable for the balance of the rent term despite any default or premature vacation of the Property. *See* **Exhibit C** ¶ 28.

27. Indeed, Section 48 of the Lease Extension reiterates Hong Kong Supermarket's obligation to pay reasonable attorney's fees and costs of Plaintiff incurred as a result of Hong Kong Supermarket's default or breach of the Lease Extension. *See* **Exhibit C** ¶ 48.

28. Furthermore, Defendant agreed to guarantee all payments due under the Lease Extension. *See* **Exhibit C** ¶ 59.

29. Defendant executed a guaranty on September 15, 2011 (the "Guaranty") for any rent and additional rent due under the Lease Extension which remains unpaid by Hong Kong Supermarket. *See* **Exhibit C**, Schedule C.

30. Sometime after September 15, 2011, Hong Kong Supermarket assigned its rights under the Lease to HKS.

31. As of November 25, 2014, Hong Kong Supermarket and HKS were approximately $437,886.72 in arrears for rent and additional rent. Annexed hereto as **Exhibit D** is a true and correct copy of a rent arrears payment agreement dated December 1, 2014 ("Rent Arrears Agreement").

32. On December 1, 2014, Plaintiff, Hong Kong Supermarket, and HKS entered into the Rent Arrears Agreement to address the non-payment of rent. *See* **Exhibit D**.

33. Plaintiff agreed to a $100,000.00 reduction in rent and additional rent owed if Hong Kong Supermarket and HKS made all payments due under the Rent Arrears Agreement. *See* **Exhibit D**.

34. The Rent Arrears Agreement required Hong Kong Supermarket and HKS to make monthly payments of $28,157.23, in addition to other amounts due and owing under the Lease, in each month of 2015. *See* **Exhibit D**.

35. Hong Kong Supermarket and HKS breached the Rent Arrears Agreement by failing to make all payments due thereunder.

36. On or about August 1, 2017, Plaintiff, Hong Kong Supermarket, HKS, and Defendant entered into the Second Rent Arrears Payment Agreement ("Second Rent Arrears Agreement"). Annexed hereto as **Exhibit E** is a true and correct copy of the Second Rent Arrears Agreement.

37. As of July 31, 2017, Hong Kong Supermarket and HKS were approximately $925,576.85 in arrears for rent and additional rent and acknowledged that amount as accurate and owing. *See* **Exhibit E**.

38. In exchange for forgiveness of $751,440.73 in outstanding rent and additional rent due, Hong Kong Supermarket, HKS, and Defendant agreed to construct a food court at the Property costing no less than $1,000,000.00. *See* **Exhibit E**.

39. In the event of default under the Second Rent Arrears Agreement, Hong Kong Supermarket, HKS, and Defendant agreed to immediately surrender possession of the Property to Plaintiff. *See* **Exhibit E**.

091420.000002.68631722

40. Furthermore, the Second Rent Arrears Agreement, expanded the scope of the Guaranty to remove any time restriction on Defendant's guarantee of rent and additional rent which is due and unpaid pursuant to the Lease Extension. *See* **Exhibit E**.

41. Hong Kong Supermarket, HKS, and Defendant breached the Second Rent Arrears Agreement by failing to construct the food court and failing to make payments due thereunder.

42. Hong Kong Supermarket, HKS, and Defendant further refused to vacate the Property upon such default compelling Plaintiff to file a summary eviction action against Hong Kong Supermarket.

43. On October 10, 2018, in resolution of the summary eviction action, Hong Kong Supermarket, HKS, and Defendant agreed to vacate the Property by November 15, 2018 by way of a Consent Judgment of Possession. Annexed hereto as **Exhibit F** is a true and correct copy of the Consent Judgment of Possession.

44. Hong Kong Supermarket, HKS, and Defendant thereafter refused to vacate the Property in accord with the Consent Judgment of Possession.

45. On April 12, 2019, Plaintiff evicted Hong Kong Supermarket, HKS, and Defendant from the Property.

46. On April 13, 2019, Plaintiff and HKS entered into a License Agreement for the Property (the "License Agreement"). Annexed hereto as **Exhibit G** is a true and correct copy of the License Agreement.

47. The License Agreement confirmed that Plaintiff was in full possession of the Property and HKS relinquished all "right, title, and interest" to the Property. *See* **Exhibit G**.

48. The License Agreement permitted HKS to utilize a small portion of the supermarket area of the Property to liquidate its remaining inventory. *See* **Exhibit G**.

49. HKS's license to utilize a small portion of the Property commenced on April 13, 2019 at 7:00 a.m. and terminated on April 30, 2019 at 8:00 p.m. *See* **Exhibit G**.

50. HKS were required to remove all personalty, equipment, goods, and inventory from the Property prior to expiration of the License Agreement term. *See* **Exhibit G**.

51. In order to secure HKS's timely removal from the Property at the expiration of the License Agreement Term, HKS placed $150,000.00 in escrow payable to Plaintiff in the event that HKS does not completely vacate the Property on or before April 3, 2019. *See* **Exhibit G**.

52. Specifically, paragraph 17 of the License Agreement provides as follows:

> As security for its faithful removal from the Premises on or before April 30, 2019, Licensee shall deposit the sum of $150,000.00 into the escrow account of its attorney, thereafter to be transferred to the escrow account of Ansell Grimm and Aaron, P.C. on or before April 16, 2019. The full escrow shall be returned to Licensee on or before May 10, 2019 upon Licensee's vacating the Premises on or before April 30, 2019. However, should Licensee continue its use of the Premises after April 30, 2019, said sum shall be immediately payable to Landlord as liquidated damages.

*See* **Exhibit G**.

53. The License Agreement also provides that Plaintiff is entitled to reasonable attorneys' fees and costs resulting from HKS's breach of the License Agreement. *See* **Exhibit G**.

54. HKS did not vacate the Property on or before April 30, 2019.

55. As of July 31, 2017, Hong Kong Supermarket, HKS, and Defendant owed Plaintiff at least $751,440.73 in rent and additional rent.

56. From August 1, 2017 through filing of the initial Complaint in the State Court Action, at least $1,309,400.00 remains unpaid by the Hong Kong Supermarket, HKS, and Defendant pursuant to the Lease Extension, including $827,627 in rent, $205,104.00 in CAM charges, $258,606 in real estate taxes, and $18,064.00 in penalties, with those numbers having

091420.000002.68631722

grown as a result of Hong Kong Supermarket, HKS, and Defendant's failure to vacate the Property, and attorneys' fees and costs attendant to eviction, prosecuting the State Court Action, and Defendant's bankruptcy.

57. Plaintiff also is entitled to rent and additional rent for the balance of the Lease Extension term.

58. At all relevant times, Hong Kong Supermarket, HKS, and Defendant had numerous sub-tenants at the Property, including stores within the supermarket and an Asian buffet next door.

59. Hong Kong Supermarket and HKS received rent and additional rent payments on a monthly basis from subtenants.

60. None of the rent and additional rent received from subtenants were paid to Plaintiff during the years where Hong Kong Supermarket, HKS, and Defendant failed to pay rent and additional rent due and owing under the Lease and Lease Extension.

61. Upon information and belief, Defendant received the rent and additional rent payments from subtenants from HKS and Hong Kong Supermarket rather than paying those rent payments to Plaintiff.

62. Defendant received the rent and additional rent payments from subtenants even after Defendant was aware that Plaintiff intended to institute litigation and after Plaintiff did in fact institute litigation.

63. HKS and Hong Kong Supermarket returned to the Property to conduct a "going out of business sale" after eviction.

64. None of the proceeds from the "going out of business sale" were paid to Plaintiff.

65. Upon information and belief, Defendant received the proceeds from the "going out of business sale" rather than paying those proceeds to Plaintiff.

091420.000002.68631722

66. Defendant received the proceeds from the "going out of business sale" despite Plaintiff already institute litigation against Hong Kong Supermarket, HKS, and Defendant.

67. Despite numerous opportunities, Defendant has not yet filed any schedules which identifies what distributions he received from Hong Kong Supermarket and HKS.

68. Plaintiff intends to file a proof of claim in this matter prior to the filing deadline.

69. Plaintiff's damages are unliquidated at this time and subject to revision as more information is acquired both in this action and the State Court Action.

**FIRST CAUSE OF ACTION**
(Declaring Plaintiffs' Claims Non-Dischargeable – 11 U.S.C. § 523(a)(2))

70. Plaintiff repeats and re-alleges every allegations set forth in the previous sections, as if set forth at length herein.

71. 11 U.S.C. § 523(a)(2) provides that a Chapter 11 discharge does not discharge a debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud…"

72. Upon information and belief, Defendant received fraudulent transfers and fraudulent conveyances from Hong Kong Supermarket and HKS while at all times aware of Plaintiff's claims.

73. Upon information and belief, Defendant received the rental payments from subtenants and proceeds from the "going out of business sale" without first satisfying his, Hong Kong Supermarket, and HKS's creditors, including Plaintiff.

74. Defendant knew or should have known that Hong Kong Supermarket and HKS would not have sufficient funds to satisfy their creditors, including Plaintiff, at the time he received the distributions.

10

75. Therefore, the debts described above are not dischargeable pursuant to 11 U.S.C. § 523 (a)(2) because they involve money obtained by Defendant through actual fraudulent conduct.

**WHEREFORE,** Plaintiff demands judgment:

1) For an order compelling confirming that any debts due from Defendant to Plaintiff are not dischargeable in this bankruptcy; and

2) For such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

Dated: Woodland Park, New Jersey
October 8, 2020

ANSELL GRIMM & AARON, P.C.

By: *s/ Joshua S. Bauchner*
Joshua S. Bauchner, Esq.
365 Rifle Camp Road
Woodland Park, New Jersey 07424
(973) 247-9000 Phone
jb@ansellgrimm.com

*Attorneys for Plaintiff*

091420.000002.68631722