**EXHIBIT A**

**ANSELL GRIMM & AARON, P.C.**
Anthony J. D'Artiglio, Esq. (#117682014)
Joshua S. Bauchner, Esq. (#0551242013)
365 Rifle Camp Road
Woodland Park, New Jersey 07424
(973) 247-9000 Phone
(973) 247-9199 Facsimile

*Attorneys for Plaintiff*

| | |
|---|---|
| HARARY GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HONG KONG SUPERMARKET OF EAST BRUNSWICK, INC., H.K.S OF EAST BRUNSWICK REALTY, LLC and JEFFREY WU a/k/a MYINT J. KYAW,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>MIDDLESEX COUNTY- LAW DIVISION<br><br>DOCKET NO. MID-L-1450-19<br><br>Civil Action<br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, Harary Group, LLC, by way of this Amended Complaint against Defendants, Hong Kong Supermarket of East Brunswick, Inc., H.K.S. of East Brunswick Realty, LLC, and Jeffrey Wu a/k/a Myint J. Kyaw, states:

**PARTIES**

1. Plaintiff, Harary Group, LLC ("Plaintiff"), is a corporation registered to do business within the State of New Jersey with its principal place of business located at 275 State Route 18, East Brunswick, New Jersey 08816.

2. Defendant Hong Kong Supermarket of East Brunswick, Inc. ("Hong Kong Supermarket") is a New Jersey corporation with its former principal place of business located at 275 Route 18, East Brunswick, New Jersey 08816.

1

3. Defendant H.K.S. of East Brunswick Realty, LLC ("H.K.S.") is a New Jersey company with its former principal place of business located at 275 Route 18, East Brunswick, New Jersey 08816.

4. Defendant Jeffrey Wu a/k/a Myint J. Kyaw ("Wu" and with Hong Kong Supermarket and H.K.S. "Defendants") is an individual with a former business address of 275 Route 18, East Brunswick, New Jersey 08816, and a personal address of 60 Overlook Road, Locust Valley, new York 11560.

5. Wu is the owner and principal of both Hong Kong Supermarket and H.K.S.

## FACTUAL BACKGROUND

6. In or around July, 1993, Leon Harary, E.B., as landlord and predecessor-in-interest to Plaintiff, entered into a written lease (the "Lease") with the soon to be formed Hong Kong Supermarket, to lease certain real property located at 275 Route 18, East Brunswick, New Jersey 08816 (the "Property").  A true and correct copy of the Lease is annexed hereto as **Exhibit A**.

7. The initial term of the Lease was for 15 years.  *See* **Exhibit A** ¶ 1.

8. Rent and additional rent is due on the first of every month.  *See* **Exhibit A** ¶ 2.

9. Pursuant to the Section 4 of the Lease, Hong Kong Supermarket is required to pay its proportional share of all costs associated with operation and maintenance of the Property and common areas, including utilities and CAM charges, and taxes for the Property, which are considered additional rent.  *See* **Exhibit A** ¶¶ 4 and 8.

10. In that same vein, the Lease clearly provides that the tenancy will be a "net" tenancy.  *See* **Exhibit A** ¶ 11.

11. Section 14 of the lease provides the following:

2

> Tenant shall, without any previous demand therefor, pay to Landlord, or its agent, the Rent at the times and in the manner herein provided. In the event of the non-payment of the Rent, or any installment thereof, at the times and in the manner above provided, and if the same shall remain default for five (5) days…Landlord or its agents shall have the right to and may enter the Premises as the agent of Tenant, either by force or otherwise…Such re-entry by Landlord shall not operate to release Tenant from any Rent to be paid or covenants to be performed hereunder during the full term of this Lease.

*See* **Exhibit A** ¶ 14.

12. Furthermore Section 14 provides that Hong Kong Supermarket will be liable for all costs to repair the Property after default and to re-let the Property after default. *See* **Exhibit A** ¶ 14.

13. Hong Kong Supermarket is also liable to Plaintiff for all "reasonable attorney's fees and other expenses incurred by Landlord in enforcing Tenant's obligation to pay Rent or any other default of Tenant, whether or not a trial ensues." *See* **Exhibit A** ¶ 14.

14. Indeed, Section 68 of the Lease reiterates Hong Kong Supermarket's obligation to pay reasonable attorney's fees and costs of Plaintiff incurred "in enforcing any of the covenants, terms, and provisions of this Lease, or in terminating this Lease by reason of Tenant's default." *See* **Exhibit A** ¶ 68.

15. Upon a failure to pay rent, Hong Kong Supermarket shall be liable to Plaintiff for interest on the outstanding balance at the highest rate allowable by law. *See* **Exhibit A** ¶ 49.

16. On September 15, 2011, Plaintiff and Hong Kong Supermarket agreed to a new, Lease extension for the Property (the "Lease Extension"), inclusive of an increase in square footage for the rental Property. A true and correct copy of the Lease Extension is annexed hereto as **Exhibit B**.

091420.000000.62368602

17. The Lease Extension included a 15 year term extending through September 30, 2026.  *See* **Exhibit B** ¶ 1.

18. The Lease Extension provides for a yearly base rent of $578,350.00 from 2012 through 2014, $613,320.00 from 2014 through 2017, $640,220.00 from 2017 through 2022, and $661,740.00 from 2020 through the end of the Lease Extension term.  *See* **Exhibit B**, Schedule B.

19. The Lease Extension requires rent and additional rent to be paid on the first of every month.  *See* **Exhibit B** ¶ 2.

20. The Lease Extension includes a 10% late charge for all rent and additional rent which is more than 10 days past due.  *See* **Exhibit B** ¶ 2.

21. Section 4 of the Lease Extension requires Hong Kong Supermarket to pay its proportional share of all costs associated with operation and maintenance of the Property and common areas, including utilities and CAM charges, and taxes for the Property, which are considered additional rent.  *See* **Exhibit B** ¶¶ 4, 8, and 29.

22. In that same vein, the Lease Extension clearly provides that the tenancy will be a "net" tenancy.  *See* **Exhibit B** ¶ 11.

23. Section 28 of the Lease Extension provides that it shall be a default under the Lease Extension to fail to pay rent and additional rent when it becomes due and payable.  *See* **Exhibit B** ¶ 28.

24. Section 28 further provides that Hong Kong Supermarket shall be reasonable for all "reasonable attorneys' fees, brokerage fees, and/or the cost of putting the [Property] in good order, and for preparing the same for re-rental" as a result of Hong Kong Supermarket's default.  *See* **Exhibit B** ¶ 28.

091420.000000.62368602

25. Hong Kong Supermarket remains liable for the balance of the rent term despite any default or premature vacation of the Property. *See* **Exhibit B** ¶ 28.

26. Indeed, Section 48 of the Lease Extension reiterates Hong Kong Supermarket's obligation to pay reasonable attorney's fees and costs of Plaintiff incurred as a result of Hong Kong Supermarket's default or breach of the Lease Extension. *See* **Exhibit B** ¶ 48.

27. Furthermore, Wu agreed to guarantee all payments due under the Lease Extension. *See* **Exhibit B** ¶ 59.

28. Wu did execute a guaranty on September 15, 2011 (the "Guaranty") for any rent and additional rent due under the Lease Extension which remains unpaid by Hong Kong Supermarket. *See* **Exhibit B**, Schedule C.

29. Sometime after September 15, 2011, Hong Kong Supermarket assigned its rights under the Lease to H.K.S.

30. As of November 25, 2014, Hong Kong Supermarket and H.K.S were approximately $437,886.72 in arrears for rent and additional rent. Annexed hereto as **Exhibit C** is a true and correct copy of a rent arrears payment agreement dated December 1, 2014 ("Rent Arrears Agreement").

31. On December 1, 2014, Plaintiff, Hong Kong Supermarket, and H.K.S. entered into the Rent Arrears Agreement to address the non-payment of rent. *See* **Exhibit C**.

32. Plaintiff agreed to a $100,000.00 reduction in rent and additional rent owed if Hong Kong Supermarket and H.K.S. made all payments due under the Rent Arrears Agreement. *See* **Exhibit C**.

091420.000000.62368602

33. The Rent Arrears Agreement required Hong Kong Supermarket and H.K.S. to make monthly payments of $28,157.23, in addition to other amounts due and owing under the Lease, in each month of 2015. *See* **Exhibit C**.

34. Hong Kong Supermarket and H.K.S. breached the Rent Arrears Agreement by failing to make all payments due thereunder.

35. On or about August 1, 2017, Plaintiff and Defendants entered into the Second Rent Arrears Payment Agreement ("Second Rent Arrears Agreement"). Annexed hereto as **Exhibit D** is a true and correct copy of the Second Rent Arrears Agreement.

36. As of July 31, 2017, Hong Kong Supermarket and H.K.S. were approximately $925,576.85 in arrears for rent and additional rent and acknowledged that amount as accurate and owing. *See* **Exhibit D**.

37. In exchange for forgiveness of $751,440.73 in outstanding rent and additional rent due, Defendants agreed to construct a food court at the Property costing no less than $1,000,000.00. *See* **Exhibit D**.

38. In the event of default under the Second Rent Arrears Agreement, Defendants agreed to immediately surrender possession of the Property to Plaintiff. *See* **Exhibit D**.

39. Furthermore, the Second Rent Arrears Agreement, expanded the scope of the Guaranty to remove any time restriction on Wu's guarantee of rent and additional rent which comes due under the Lease Extension but is unpaid by Defendants. *See* **Exhibit D**.

40. Defendants breached the Second Rent Arrears Agreement by failing to construct the food court and failing to make payments due thereunder.

41. Defendants further refused to vacate the Property upon such default compelling Plaintiff to file a summary eviction action against Hong Kong Supermarket.

091420.000000.62368602

42. On October 10, 2018, in resolution of the summary eviction action, Defendants agreed to vacate the Property by November 15, 2018 by way of a Consent Judgment of Possession. Annexed hereto as **Exhibit E** is a true and correct copy of the Consent Judgment of Possession.

43. Defendants thereafter refused to vacate the Property in accord with the Consent Judgment of Possession.

44. On April 12, 2019, Plaintiff evicted Defendants from the Property.

45. On April 13, 2019, Plaintiff and Defendants entered into a License Agreement for the Property (the "License Agreement"). Annexed hereto as **Exhibit F** is a true and correct copy of the License Agreement.

46. The License Agreement confirmed that Plaintiff was in full possession of the Property and Defendants relinquished all "right, title, and interest" to the Property. *See* **Exhibit F**.

47. The License Agreement permitted Defendants to utilize a small portion of the supermarket area of the Property to liquidate its remaining inventory. *See* **Exhibit F**.

48. Defendants' license to utilize a small portion of the Property commenced on April 13, 2019 at 7:00 a.m. and terminated on April 30, 2019 at 8:00 p.m. *See* **Exhibit F**.

49. Defendants were required to remove all personalty, equipment, goods, and inventory from the Property prior to expiration of the License Agreement term. *See* **Exhibit F**.

50. In order to secure Defendants timely removal from the Property at the expiration of the License Agreement Term, Defendants placed $150,000.00 in escrow payable to Plaintiff in the event that Defendants do not completely vacate the Property on or before April 3, 2019. *See* **Exhibit F**.

51. Specifically, paragraph 17 of the License Agreement provides as follows:

> As security for its faithful removal from the Premises on or before April 30, 2019, Licensee shall deposit the sum of $150,000.00 into the escrow account of its attorney, thereafter to be transferred to the escrow account of Ansell Grimm and Aaron, P.C. on or before April 16, 2019. The full escrow shall be returned to Licensee on or before May 10, 2019 upon Licensee's vacating the Premises on or before April 30, 2019. However, should Licensee continue its use of the Premises after April 30, 2019, said sum shall be immediately payable to Landlord as liquidated damages.

*See* **Exhibit F**.

52. The License Agreement also provides that Plaintiff is entitled to reasonable attorneys' fees and costs resulting from Defendants' breach of the License Agreement. *See* **Exhibit F**.

53. Defendants did not vacate the Property on or before April 30, 2019.

54. Indeed, Defendants continued to remove equipment and inventory from the Property for several days after April 30, 2019.

55. Plaintiff's counsel informed Defendants' counsel it intended to transfer the $150,000.00 escrow amount to Plaintiff pursuant to the License Agreement.

56. Defendants objected to Plaintiff retaining the escrow amount despite their failure to faithfully depart the Property on or before April 30, 2019.

57. Therefore, Plaintiff seeks a Court Order permitting Plaintiff to retain the entirety of the escrow amount in accord with the License Agreement.

58. As of July 31, 2017, Defendants owed Plaintiff at least $751,440.73 in rent and additional rent.

59. From August 1, 2017 through filing of the initial Complaint, at least $1,309,400.00 remains unpaid by the Defendants pursuant to the Lease Extension, including $827,627 in rent, $205,104.00 in CAM charges, $258,606 in real estate taxes, and $18,064.00 in penalties, with

those numbers having grown as a result of Defendants' failure to vacate the Property, including costs attendant to evicting Defendants from the Property.

## COUNT ONE
**(Breach of Contract)**

60. Plaintiff repeats and re-alleges each and every allegation as set forth above, as if set forth at length herein.

61. The Lease and Lease Extension between Plaintiff and Hong Kong Supermarket are contracts.

62. Hong Kong Supermarket and its assignee H.K.S. breached the Lease and Lease Extension by failing to pay all amounts due and owing.

63. Hong Kong Supermarket and H.K.S' numerous and ongoing breaches of the Lease and Lease Extension constitute a default thereunder.

64. As a result of Defendants' default, Plaintiff is entitled to accelerate the total value of the remaining Lease Extension term as presently due and owing, in addition to recovering all other amounts present due and owing pursuant to the Lease and Lease Extension.

65. The Guaranty between Wu and Plaintiff is a contract.

66. As a result of Defendants' breach and default under the Lease and Lease Extension, Wu is liable to Plaintiff under the Guaranty as modified.

67. Wu breached the Guaranty by failing to pay all amounts due and owing.

68. The Rent Arrears Agreement and Second Rent Arrears Agreement between Plaintiff and Defendants are contracts.

69. Defendants breached the Rent Arrears Agreement and Second Rent Arrears Agreement by failing to pay all amounts due and owing and failing to construct a food court.

9

091420.000000.62368602

70. The License Agreement between Plaintiff and Defendants is a contract.

71. Defendants breached the License Agreement by failing to vacate the Property on or before April 30, 2019.

72. By virtue of this breach, Plaintiff is entitled to the entire escrow amount currently held by Ansell Grimm & Aaron, P.C. , as escrow agent, in the amount of $150,000.00.

73. As a result of Defendants' breaches, Plaintiff has been harmed and damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

a) Awarding actual damages;

b) Awarding Plaintiff the $150,000.00 escrow amount provided for in the License Agreement;

c) Awarding compensatory damages;

d) Awarding punitive damages;

e) Awarding attorneys' fees and costs of suit; and

f) For such other and further relief the Court deems just and proper.

## COUNT TWO
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

74. Plaintiff repeats and re-alleges each and every allegation as set forth above, as if set forth at length herein.

75. All of the agreements described in Count One are contracts.

76. Defendants had a duty to discharge their obligations under these agreements in good faith.

77. Defendants refused to adhere to its obligations under these agreements in bad faith.

78. Defendants engaged in a course of conduct explicitly designed to maintain possession of the Property without payment for as long as possible while stalling Plaintiff from seeking eviction.

79. As a result of Defendants' breaches, Plaintiff has been harmed and damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

a) Awarding actual damages;

b) Awarding compensatory damages;

c) Awarding punitive damages;

d) Awarding attorneys' fees and costs of suit; and

e) For such other and further relief the Court deems just and proper.

## **COUNT THREE**
### **(Unjust Enrichment)**

80. Plaintiff repeats and re-alleges each and every allegation as set forth above, as if set forth at length herein.

81. Defendants retained the benefit of possession of the Property without properly compensating Plaintiff for that benefit.

82. It is unjust to permit Defendants to retain the benefit of possession of the Property without just compensation to Plaintiff.

83. As a result of Defendants' misconduct, Plaintiff has been harmed and damaged in an amount to be determined at trial

**WHEREFORE**, Plaintiff demands judgment against Defendants:

a) Awarding actual damages;

091420.000000.62368602

    b) Awarding compensatory damages;

    c) Awarding punitive damages;

    d) Awarding attorneys' fees and costs of suit; and

    e) For such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demand a trial by jury on all issues subject to trial.

Dated: Woodland Park, New Jersey    ANSELL GRIMM & AARON, P.C.
       July 5, 2019

By: s/*Anthony J. D'Artiglio*
    Anthony J. D'Artiglio, Esq.
    *Attorneys for Plaintiff*

## CERTIFICATION OF NO OTHER PARTIES/ACTIONS

I, Anthony J. D'Artiglio, Esq., attorney for the Plaintiff in the within action, hereby certify that to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or any arbitration proceeding and no other action or arbitration proceeding is contemplated. Further, I know of no other party who should be joined in this action.

Dated: Woodland Park, New Jersey
       July 5, 2019        s/ *Anthony J. D'Artiglio*
                                Anthony J. D'Artiglio, Esq.

## RULE 1:38-7 CERTIFICATION

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated: Woodland Park, New Jersey
       July 5, 2019        s/ *Anthony J. D'Artiglio*
                                Anthony J. D'Artiglio, Esq.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Anthony J. D'Artiglio, Esq., of Ansell Grimm & Aaron, P.C. is hereby designated as trial counsel for the within matter.

Dated:  Woodland Park, New Jersey
       July 5, 2019                                s/*Anthony J. D'Artiglio*
                                                           Anthony J. D'Artiglio, Esq.